# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Carlos Hilario Arias; Vicente Cisneros Abonce,
both individually and as "next friend" for his minor
children, E.C.A., V.C.A., Jr., and J.C.A.; Dulce
Maria Hernandez Arias; Rosa de Jesus Barrajas
Arrellano; Graciela Barragan, both individually
and as "next friend" for her minor child, J.A.P.;
Jose Manuel Ramirez Calix; Alejandro Cartagena;
William Ramos Castillo; Fabiola Cisneros; Rosa
Nely Duarte; Esau Eduardo Estrada-Menendez;
L.G., both individually and as "next friend" for
her minor child, A.G.; Francis Garcia, both
individually and as "next friend" for her minor
child, O.B.; Teresa de Jesus Guerrero; Wenscelao
Padilla Guzman; Troy Hastings, both individually
and as "next friend" for his minor child, B.H.;
Joceline Sarai Lopez, both individually and as
"next friend" for her minor child, J.M.; Rosa Sorto
Lopez; Ana Danira Maldonado-Hernandez; Iris
Janet Maldonado, both individually and as "next
friend" for her three minor children, P.M., B.M.,
and E.M..; Jenny Maldonado, both individually and
as "next friend" for her minor child, S.D.M.;
Ermencia Mendez; Audrey Mithun; Barbara Anahi
Moreno; Javier Moreno; Josefa C. Montalvo, both
individually and as "next friend" to her minor
grandchild, B.M.; Albis Muñoz; Francisco Muñoz,
both individually and as "next friend" for one minor
child, I.M.; Juan Muñoz; Saomara Muñoz; Manuela
de Jesus Pineda; Jaime Reyes, both individually and
as "next friend" for his two minor children, D.R.B.
and J.R.B.; Marlen Alonso Soriano; Alex Josue Sorto;
Andres Menendez Vega; Raul Veliz, Jr.; Digna
Munoz Xiomara; Jorge Zelaya; Samuel Zelaya; and
Jose Erasmo Montalvan, the Consúl of Honduras, as
"next friend" to Honduran Nationals,

        Plaintiffs,

    v.

United States Immigration and Customs Enforcement
Division of the Department of Homeland Security;
United States Department of Homeland Security;

**MEMORANDUM OPINION
AND ORDER**
Civ. No. 07-1959 ADM/JSM

Michael Chertoff, Secretary of Department of
Homeland Security; Julie L. Myers, Assistant
Secretary of Homeland Security for Immigration and
Customs Enforcement; John P. Torres, Director of
Detention and Removal Operations, Immigration and
Customs Enforcement; Scott Baniecke, St. Paul Field
Office Director for Detention and Removal Operation;
Peter Berg, Supervisory Detention & Deportation
Officer, Detention and Removal; Allen Gay, Deportation
Officer, Detention and Removal; John Doe ICE Agents
##1-30; James A. Kulset, Willmar Police Department
Chief of Police; John Doe Willmar Police Officers
##1-10; Reed Schmidt, Atwater Police Department
Chief of Police; Paul Schmidt, Atwater Police Officer;
Dan Hartog, Kandiyohi County Sheriff; John Doe
Kandiyohi County Sheriff's Deputies ##1-10; and Jane Doe
Kandiyohi County Probation Official,

            Defendants.

---

Daniel R. Shulman, Esq., Gray Plant, Monty, Monty & Bennett, P.A., Minneapolis, MN, and
Gloria Contreras Edin, Esq., Centro Legal, Inc., St. Paul, MN, argued on behalf of Plaintiffs.

Gjon Juncaj, Esq., and Arthur Rizer, Trial Attorneys, Office of Immigration Litigation, Civil
Division, United States Department of Justice, Washington, D.C., argued on behalf of the United
States Immigration and Customs Enforcement Division of the Department of Homeland
Security, and on behalf of Michael Chertoff, Julie L. Myers, John P. Torres, Scott Baniecke,
Peter Berg, and Allen Gay, to the extent they are sued in their official capacities.

Lonnie F. Bryan, Esq., Assistant United States Attorney, Minneapolis, MN, argued on behalf of
Julie L. Myers, John P. Torres, Scott Baniecke, Peter Berg, and Allen Gay, to the extent they are
sued in their individual capacities.

Jon K. Iverson, Esq., Iverson Reuvers, LLC, Bloomington, MN, argued on behalf of James A.
Kulset, John Doe Willmar Police Officers ##1-10, Reed Schmidt, and Paul Schmidt.

Scott T. Anderson, Esq., Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, argued on behalf
of Dan Hartog, John Doe Kandiyohi County Sheriff's Deputies ##1-10, and Jane Doe Kandiyohi
County Probation Official.

---

# I. INTRODUCTION

On January 9, 2008, the undersigned United States District Judge heard oral argument on:  (1) Defendants United States Immigration and Customs Enforcement Division ("ICE") of the Department of Homeland Security ("DHS"), Michael Chertoff ("Chertoff"), Julie L. Myers ("Myers"), John P. Torres ("Torres"), Scott Baniecke ("Baniecke"), Peter Berg ("Berg"), and Allen Gay's ("Gay") (ICE, Chertoff, Myers, Torres, Baniecke, Berg, and Gay in their official capacities are the "United States Defendants") Motion to Dismiss [Docket No. 77] Counts I-IV, VI, and VII of Plaintiffs' Second Amended Complaint [Docket No. 43]; (2) Defendants Myers, Torres, Baniecke, Berg, and Gay's (Myers, Torres, Baniecke, Berg, and Gay in their individual capacities are the "Bivens Defendants") Motion to Dismiss or For Summary Judgment [Docket No. 68]; (3) Defendants City of Willmar, James A. Kulset ("Kulset"), John Doe Willmar Police Officers ##1-10 (collectively, the "Willmar Defendants"), City of Atwater, Reed Schmidt, and Paul Schmidt's (collectively, the "Atwater Defendants") (the Willmar Defendants and the Atwater Defendants collectively are the "City Defendants") Motion for Dismissal or for Summary Judgment [Docket No. 55]; and (4) Defendants Dan Hartog ("Hartog"), John Doe Kandiyohi County Sheriff's Deputies ##1-10, and Jane Doe Kandiyohi County Probation Official's (collectively, the "Kandiyohi County Defendants") Motion to Dismiss or For Summary Judgment and their alternative Motion for Severance [Docket No. 60].  For the reasons set forth below, the United States Defendants' Motion is granted, the Bivens Defendants' Motion is granted in part and denied in part, the City Defendants' Motion is granted in part and denied in part, and the Kandiyohi County Defendants' Motion is granted in part and denied in part.

## II. BACKGROUND

The following facts relevant to Plaintiffs' claims are taken from the Second Amended Complaint, except where noted otherwise.  Plaintiffs' factual allegations are assumed to be true for the purpose of the Rule 12(b)(6) motions to dismiss filed by Defendants.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).  The Court will separately address the facts relevant to the alternative motions for summary judgment.

### A.   Parties

#### 1.   Plaintiffs

Plaintiffs Carlos Hilario Arias ("Carlos Arias"), Vicente Cisneros Abonce ("Abonce"), Dulce Maria Hernandez Arias ("Dulce Arias"), Rosa de Jesus Barrajas Arrellano ("Arrellano"), Jose Manuel Ramirez Calix ("Calix"), Alejandro Cartagena ("Cartagena"), William Ramos Castillo ("Castillo"), Fabiola Cisneros ("Cisneros"), Rosa Nely Duarte ("Duarte"), Esau Eduardo Estrada-Menendez ("Estrada-Menendez"), L.G., Francis Garcia ("Garcia"), Teresa de Jesus Guerrero ("Guerrero"), Wenscelao Padilla Guzman ("Guzman"), Joceline Sarai Lopez ("Lopez"), Rosa Sorto Lopez ("Rosa Lopez"), Ana Danira Maldonado-Hernandez ("Maldonado-Hernandez"), Iris Janet Maldonado ("Iris Maldonado"), Jenny Maldonado, Ermencia Mendez ("Mendez"), Barbara Anahi Moreno ("Barbara Moreno"), Javier Moreno ("Javier Moreno"), Josefa C. Montalvo ("Montalvo"), Albis Muñoz, Francisco Muñoz, Juan Muñoz, Saomara Muñoz, Manuela de Jesus Pineda ("Pineda"), Jaime Reyes ("Reyes"), Marlen Alonso Soriano ("Soriano"), Alex Josue Sorto ("Sorto"), Andres Menendez Vega ("Vega"), Raul Veliz, Jr. ("Veliz"), Digna Munoz Xiomara ("Xiomara"), Jorge Zelaya, and Samuel Zelaya are persons of Latin-American origin who during all relevant times were residents of the City of Willmar in

4

Kandiyohi County, Minnesota.  Am. Compl. ¶¶ 9-12, 14-23, 25-30, 32-47.

Plaintiffs Troy Hastings ("Hastings") and Audrey Mithun ("Mithun") are Caucasian.  Id. ¶¶ 24, 31.  During all relevant times Hastings and Mithun were residents of Willmar.  Id. ¶¶ 24, 31.

Abonce is the parent of three minor children, E.C.A., V.C.A., Jr., and J.C.A.  Id. ¶ 10.  L.G. is the parent of a minor child, A.G.  Id. ¶ 20.  Francis Garcia is the parent of a minor child, O.B.  Id. ¶ 21.  Hastings is the parent of a minor child, B.H.  Id. ¶ 24.  Joceline Sarai Lopez is the parent of a minor child, J.M.  Id. ¶ 25.  Iris Maldonado is the parent of three minor children, P.M., B.M., and E.M.  Id. ¶ 28.  Jenny Maldonado is the parent of a minor child, S.D.M.  Id. ¶ 29.  Montalvo is the grandparent of a minor child, B.M.  Id. ¶ 34.  Francisco Muñoz is the parent of one minor child, I.M.  Id. ¶ 36.  Reyes is the parent of two minor children, D.R.B. and J.R.B.  Id. ¶ 40.  These children were also residents of Willmar.  Id. ¶¶ 10, 20-21, 24-25, 28-29, 34, 36, 40.

Plaintiff Graciela Barragan ("Barragan") is a female of Latin-American origin who is the parent of a minor child, J.A.P.  Id. ¶ 13.  During all relevant times, Barragan and J.A.P. were residents of the City of Atwater in Kandiyohi County, Minnesota.  Id. ¶ 13.

Barragan, L.G., Hastings, Joceline Lopez, Mithun, Javier Moreno, Sorto, and Veliz, are citizens of the United States (collectively, the "Citizen Plaintiffs").  Id. ¶¶ 13, 20, 24-25, 31, 33, 42, 44.

Abonce, Cartagena, Francis Garcia, and Soriano, are lawful permanent residents of the United States.  Id. ¶¶ 10, 15, 21, 41.  Guzman, Pineda, and Jorge Zelaya, have temporary protected status.  Id. ¶¶ 23, 39, 46.  Rosa Lopez is lawfully present in the United States (Abonce,

Cartagena, Francis Garcia, Soriano, Guzman, Pineda, Jorge Zelaya, and Rosa Lopez collectively are the "Legal-Alien Plaintiffs"). Id. ¶ 26.

Castillo, Albis Muñoz, Francisco Muñoz, Juan Muñoz, Saomara Muñoz, Pineda, and Jorge Zelaya are native Hondurans (collectively, the "Honduran Nationals"). Id. ¶¶ 16, 35-39, 46. Jose Erasmo Montalvan ("Montalvan") is the Consúl of Honduras for Illinois, Ohio, Indiana, Michigan, Iowa, Wisconsin, North Dakota, South Dakota, and Minnesota. Id. ¶ 48. Montalvan appears as the "next friend" of the Honduran Nationals. Id. ¶ 48.

### 2.    Defendants

Chertoff is the Secretary of the United States Department of Homeland Security. Id. ¶ 51. Myers is the Assistant Secretary of Homeland Security. Id. ¶ 52. Torres is the Director of the Office of Detention and Removal for ICE. Id. ¶ 53. Baniecke is the Field Office Director for the St. Paul Office of Detention and Removal. Id. ¶ 54. Baniecke manages ICE's enforcement activities in Minnesota. Id. ¶ 54. Berg is a Supervisory Detention and Deportation Officer in ICE's St. Paul Office of Detention and Removal. Id. ¶ 55. Gay is a Deportation Officer in ICE's St. Paul Office of Detention and Removal. Id. ¶ 56. Kulset is the Chief of Police for the City of Willmar Police Department. Id. ¶ 58. Reed Schmidt is the Chief of Police for the City of Atwater Police Department. Id. ¶ 60. Paul Schmidt is an Atwater police officer. Id. ¶ 61. Hartog is the Sheriff of Kandiyohi County. Id. ¶ 62.

### B.    Operation Cross Check

In the spring of 2007, Defendant Jane Doe Kandiyohi County Probation Officer determined that certain persons under her supervision had been born in foreign countries and were here illegally. Id. ¶¶ 2, 65. After the probation officer notified ICE officials in

Bloomington, Minnesota, ICE agents began to plan a civil immigration enforcement operation,

known as "Operation Cross Check."  Id. ¶ 65.  Between April 5 and April 10, 2007, officials

from the City of Willmar Police Department, the Kandiyohi County Sheriff's Department, and

the Kandiyohi County Community Corrections Probation Office participated in the strategic

planning of Operation Cross Check.  Id. ¶ 67.

ICE agents implemented Operation Cross Check from April 10-14, 2007, in Willmar and

Atwater, Minnesota.  Id. ¶¶ 68-69.  ICE agents forcibly entered homes occupied by Plaintiffs,

with the exception of Veliz and Montalvan, and conducted warrantless, non-consensual searches.

Id. ¶¶ 68-69.[1]  The agents entered some homes under false pretenses, claiming they were the

police.  Id. ¶ 70.  The ICE agents detained the Latino Plaintiffs in a central room in each home,

placed them in handcuffs, and aggressively interrogated them regarding their identification and

presence in the United States.  Id. ¶ 82.  The ICE Agents neither requested identification from

nor challenged the presence of Mithun and Hastings, who are Caucasian.  Id. ¶¶ 91-92.  The ICE

agents did not advise the detained Plaintiffs of their right to remain silent and to speak with an

attorney.  Id. ¶ 83.  The ICE agents required Plaintiffs dressed in night clothes to change in front

of the agents and they did not take precautions to assure the health of Plaintiffs with medical

conditions.  Id. ¶¶ 84-88.  The agents refused to accommodate Arrellano and Iris Maldonado,

who were nursing their children.  Id. ¶ 88.

The ICE agents arrested Plaintiffs in their homes and took some Plaintiffs into custody.

Id. ¶ 93.  The ICE agents coerced some of those Plaintiffs into waiving their rights and

---

[1] Neither Veliz nor Montalvan alleges a forcible entry or a non-consensual search.  2d Am. Compl. ¶¶ 48, 68.  However, for convenience the Court will refer to "Plaintiffs" when discussing claims premised on the immigration raids.

stipulating to removal from the territorial borders of the United States.  Id. ¶ 94.  For example,

ICE agents deported Cisneros and her minor daughter, E.C., who is an American citizen.  Id. ¶

93.

On April 12, 2007, at approximately 7:00 a.m., ICE agents wearing guns and bulletproof

vests, and Willmar police officers, stopped a motor vehicle that Veliz was driving.  Id. ¶ 95.

After Veliz provided a valid driver's license and stated that he is a United States citizen, the ICE

agents detained and questioned him for approximately 20 minutes.  Id. ¶ 95.  One ICE agent

instructed others to "find something" on Veliz.  Id.

Willmar police officers and the Kandiyohi County Sheriff's Department assisted the ICE

agents in executing Operation Cross Check in Willmar, Minnesota.  Id. ¶¶ 66, 80.  Two members

of the Atwater Police Department assisted with the execution of Operation Cross Check in

Atwater, Minnesota.  Id. ¶ 69.

Plaintiffs initiated this litigation on April 19, 2007.  Compl. [Docket No. 1].  In the

Second Amended Complaint, filed on July 27, 2007, Plaintiffs allege that: (1) Defendants

violated the Fourth Amendment by committing unreasonable searches and seizures;

(2) Defendants violated the Fifth Amendment by depriving them of their liberty without due

process of law; (3) Defendants violated Plaintiffs' Fifth Amendment right to counsel and their

right against forced self-incrimination; (4) Defendants violated Plaintiffs' Sixth Amendment

right to counsel; (5) Defendants violated Plaintiffs' right to equal protection under the Fifth and

Fourteenth Amendment; and (6) Defendants violated the Immigration and Nationality Act ("the

INA"), 8 U.S.C. § 1101, et seq.  Plaintiffs seek damages, declaratory relief, and injunctive relief.

## III. DISCUSSION

**A.      Relevant Standards of Review**

**1.        Subject Matter Jurisdiction**

Rule 12(b)(1) of the Federal Rules of Civil Procedure states that a party may move to dismiss a complaint for lack of subject matter jurisdiction.  "Because jurisdiction is a threshold question, the court may look outside the pleadings in order to determine whether subject matter jurisdiction exists."  Green Acres Enters., Inc. v. United States, 418 F.3d 852, 856 (8th Cir. 2005).

**2.        Motion to Dismiss for Failure to State a Claim**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief."  A pleading must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

**3.        Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.**     **The Bivens Defendants' Motions**

   **1.**     **Subject Matter Jurisdiction**

   The Bivens Defendants argue that two provisions of the INA divest this Court of subject matter jurisdiction over Plaintiffs' Bivens claims for damages.

        **a.**     **8 U.S.C. § 1252(b)(9)**

   The Bivens Defendants argue that 8 U.S.C. § 1252(b)(9) divests this Court of subject matter jurisdiction over the Bivens claims for damages asserted by twelve Plaintiffs who are parties to removal proceedings.  Bivens Defs.' Reply Mem. [Docket No. 94] at 2 n.2.  The twelve Plaintiffs are Carlos Arias, Dulce Arias, Arrellano, Calix, Guerrero, Duarte, Estrada-Menendez, Iris Maldonado, Jenny Maldonado, Maldonado-Hernandez, Juan Muñoz, and Samuel Zelaya (collectively, the "Removal-Proceeding Plaintiffs").  Bivens Defs.' Mem. in Supp. of Mot. to Dismiss [Docket No. 74] at 11 n.10, Exs. 1-4, 7-14.

   Section 1252(b) sets forth requirements for judicial review of an order of removal.

Section 1252(b)(9) states that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction . . . to review such an order or such questions of law and fact.

Other provisions in § 1252 provide that an alien seeking judicial review of a final order of removal must file a petition for review in the appropriate court of appeals.  8 U.S.C. §1252(a)(2)(D) and (a)(5).  The Supreme Court has "described § 1252(b)(9) as a 'zipper clause.'  Its purpose is to consolidate 'judicial review' of immigration proceedings into one action in the court of appeals, but it applies only '[w]ith respect to review of an order of removal under subsection (a)(1).'"  INS v. St. Cyr, 533 U.S. 289, 313 (2001) (quoting Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 483 (1999)).

Plaintiffs argue § 1252(b)(9) is inapplicable because their damages claims are collateral to orders of removal, rather than challenges to orders of removal.  Plaintiffs rely on the First Circuit's decision in Aguilar v. U.S. ICE, 510 F.3d 1 (2007).  The plaintiffs in Aguilar were undocumented aliens who were detained by ICE agents after an immigration raid on a leather goods factory in Massachusetts.  Id. at 5-6.  The Aguilar plaintiffs sued ICE agents and other federal actors for violating their constitutional and statutory rights, including the right to counsel and the right of family integrity.  Id. at 7.  The plaintiffs sought injunctive and declaratory relief.  Id.  The Aguilar plaintiffs appealed the district court's order granting ICE's motion to dismiss.  The district court found that it was divested of subject matter jurisdiction by § 1252(b)(9).

On appeal, the First Circuit held that the words "arising from" in § 1252(b)(9) do not encompass "claims that are independent of, or wholly collateral to, the removal process.  Among

11

others, claims that cannot effectively be handled through the available administrative process fall within that purview."  Id. at 11.  The Aguilar court held that the district court lacked subject matter jurisdiction over the plaintiffs' right-to-counsel claims.  Id. at 13-14.  However, the court held that § 1252(b)(9) did not bar plaintiffs' claim that ICE agents interfered with their right of family integrity by removing them from their children before childcare arrangements could be made.  Id. at 19.  The Aguilar court stated that "[t]he issue of family integrity is completely irrelevant to the mine-run of issues that will be litigated in removal proceedings, and the claims have no bearing on the aliens' immigration status."  Id.  Nevertheless, the Aguilar court ultimately concluded that the plaintiffs' family integrity claims should be dismissed for failure to state a substantive due process claim.  Id. at 21-22.

In the instant case, the Removal-Proceeding Plaintiffs are asserting Bivens claims for damages arising from unreasonable searches and seizures prohibited by the Fourth Amendment, arbitrary detention and right-to-counsel claims under the Fifth Amendment, Sixth Amendment right-to-counsel claims, and selective enforcement in violation of the Equal Protection Clause. The Court finds that § 1252(b)(9) operates to bar these claims because they directly "aris[e] from an[] action taken or proceeding brought to remove an alien from the United States."  Unlike the family integrity claims in Aguilar, Plaintiffs' claims are common in removal proceedings and could directly impact Plaintiffs' immigration status.  "Ultimately, allowing aliens to ignore the channeling provisions of section 1252(b)(9) and bring [these] claims directly in the district court would result in precisely the type of fragmented litigation that Congress sought to forbid." Aguilar, 510 F.3d at 13-14.  Accordingly, this Court lacks subject matter jurisdiction to consider the claims of the Removal-Proceeding Plaintiffs.

      **b.**     **8 U.S.C. § 1252(g)**

The <u>Bivens</u> Defendants also contend this Court lacks subject matter jurisdiction over all

of Plaintiffs' claims in this lawsuit because 8 U.S.C. § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law
> (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any
> other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall
> have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the
> decision or action by the Attorney General to commence proceedings, adjudicate cases,
> or execute removal orders against any alien under this chapter.

Plaintiffs respond that § 1252(g)[2] is inapplicable because their claims do not arise out of a

decision to commence proceedings, adjudicate cases, or execute removal orders.

The Supreme Court in <u>Reno v. AADC</u> held that the scope of § 1252(g) is narrow:

> The provision applies only to three discrete actions that the Attorney General may take:
> her "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal
> orders." There are of course many other decisions or actions that may be part of the
> deportation process—such as the decisions to open an investigation, to surveil the
> suspected violator, to reschedule the deportation hearing, to include various provisions in
> the final order that is the product of the adjudication, and to refuse reconsideration of that
> order.
>
> It is implausible that the mention of three discrete events along the road to deportation
> was a shorthand way of referring to all claims arising from deportation proceedings. . . .

525 U.S. at 484. The <u>AADC</u> Court ultimately held that a "[selective-enforcement] challenge to

the Attorney General's decision to 'commence proceedings' . . . falls squarely within § 1252(g),"

and therefore § 1252(g) operated to bar judicial review of the claim. <u>Id.</u> at 945.

The <u>Bivens</u> Defendants argue that § 1252(g) precludes exercise of jurisdiction over each

---

[2] As another district court has noted, "the proscription of § 1252(g) against judicial review of 'decision[s] or action[s] by the Attorney General,' rather than 'the Attorney General or the Secretary of Homeland Security,' is somewhat outdated and incongruent." <u>Kaur v. Chertoff</u>, 489 F. Supp. 2d 52, 61 n.11 (D.D.C. 2007). In analyzing § 1252(g), the Court will refer interchangeably to the Attorney General and the DHS Secretary.

Plaintiff's Bivens claim.  Because the Removal-Proceeding Plaintiffs have now been dismissed

from the case, the Court will consider only whether § 1252(g) bars jurisdiction over the claims of

the Citizen Plaintiffs, the Legal-Alien Plaintiffs, and Cisneros and Castillo, who were both

deported through expedited removal proceedings because they are aggravated felons (Cisneros

and Castillo are the "Removed Plaintiffs").[3]

The Bivens Defendants correctly argue that § 1252(g) does not apply unless: (1) the

cause or claim is asserted by or on behalf of any alien; and (2) the cause or claim arises from the

Attorney General's decision or action to commence proceedings, adjudicate cases, or execute

removal orders against any alien.  Regarding the first requirement, the Bivens Defendants argue

that all of Plaintiffs' Bivens claims are by or on behalf of the Removal-Proceeding Plaintiffs and

the Removed Plaintiffs.  The Bivens Defendants rely on the fact that the First Amended

Complaint lists each Plaintiff's Bivens claim in a separate count, whereas the Second Amended

Complaint contains one count entitled "Bivens Claims of Plaintiffs . . . ."  Compare 1st Am.

Compl. [Docket No. 11] with 2d Am. Compl.  Based on this consolidation of the Bivens claims

into one count, the Bivens Defendants argue Plaintiffs have "dismissed the separate Bivens

claims brought by each individual Plaintiff."  Bivens Defs.' Mem. in Supp. of Mot. to Dismiss

at 12.

However, although the Second Amended Complaint asserts a single Bivens count, the

language of Count V does not support the Bivens Defendants' argument that Plaintiffs are only

---

[3] The Bivens Defendants assert that Arrellano has already been removed.  Bivens Defs.'
Mem. in Supp. of Mot. to Dismiss at 10 n.9.  However, they also assert that Arrellano is in
pending removal proceedings.  Id. at 11 n.10.  Until the record is clarified, this Court will assume
Arrellano is a party to a pending removal proceeding and has not yet been deported.

asserting <u>Bivens</u> claims on behalf of the Removal-Proceeding and Removed Plaintiffs.

Paragraph 119 states that "Defendants deprived Plaintiffs of certain constitutionally protected

rights."  Paragraph 124 states that "[a]s a direct and proximate result of the unconstitutional

actions of Defendants, Plaintiffs suffered harm . . . ."  The natural interpretation of this language

is that Defendants deprived *each* Plaintiff of his or her constitutional rights, and, as a result, *each*

Plaintiff suffered harm.  Accordingly, the Court reads Count V as asserting each Plaintiff's

individual <u>Bivens</u> claims.  The <u>Bivens</u> Defendants do not dispute that this Court has jurisdiction

over <u>Bivens</u> claims asserted by the Citizen Plaintiffs and the Legal-Alien Plaintiffs.

     The Court finds it has no jurisdiction over the Removed Plaintiffs.  The Fifth Circuit in

<u>Humphries v. Various Fed. INS Employees</u>, 164 F.3d 936, 943 (5th Cir. 1999) held that the

phrase "arising from" in § 1252(g) should be evaluated along a sliding scale:

> At one end of that spectrum we find claims clearly not included within the definition of 'arising from,' *i.e.*, those claims with no more than a weak, remote, or tenuous connection to a "decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."
>
> . . .
>
> At the other end of the spectrum we find claims that clearly are included within the definition of 'arising from,' *i.e.*, those claims connected directly and immediately with a "decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."

The <u>Humphries</u> court held that § 1252(g) barred a removed plaintiff's retaliatory exclusion claim

because the "decision to place Humphries in exclusion proceedings appears to provide the most

direct, immediate, and recognizable cause of Humphries' injury."  <u>Id.</u> at 945.  The court held that

§ 1252(g) did not bar Humphries' claim of involuntary servitude because the claim arose from

conduct that occurred before the Attorney General commenced removal proceedings, adjudicated

Humphries' case, or executed a removal order.  Id. at 944.  Section 1252(g) did not bar

Humphries' claim of mistreatment while in detention because "these claims bear no more than a

remote relationship to the Attorney General's decision to 'execute [Humphries'] removal

order.'"  Id. (alteration retained).

In the instant case, the Removed Plaintiffs' claims arise from conduct that was a direct

result of the DHS Secretary's decision to commence removal proceedings against them because

of their status as aliens convicted of aggravated felonies.  A finding that ICE agents violated the

Removed Plaintiffs' constitutional rights could cast doubt on the legitimacy of their removal

proceedings.  For example, Plaintiffs have alleged that "Defendants used coercive methods to

solicit and obtain waivers of rights and stipulated orders for removal for the purpose of

expediting removal of certain Plaintiffs . . . ."  2d Am. Compl. ¶ 94.  This claim arises directly

from the DHS Secretary's decision to adjudicate expedited removal proceedings and execute

removal orders for the Removed Plaintiffs.  The Court finds that § 1252(g) bars review of the

Removed Plaintiffs' claims.  If Cisneros and Castillo believed they were coerced into agreeing to

expedited removal proceedings, they could have filed a petition for review in the United States

Court of Appeals for the Eighth Circuit pursuant to 8 U.S.C. § 1252(b).

**2.      Whether a Bivens Remedy Should Be Implied**

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388

(1971), the Supreme Court held that a cause of action for money damages can be inferred

directly from the Fourth Amendment.  However, the Supreme Court has identified two situations

in which a Bivens remedy is unavailable.  The first is "when defendants show that Congress has

provided an alternative remedy which it explicitly declared to be a *substitute* for recovery

16

directly under the Constitution and viewed as equally effective."  <u>Carlson v. Green</u>, 446 U.S. 14,

18-19 (1980) (emphasis in original).  The second is where there are "special factors counseling

hesitation in the absence of affirmative action by Congress."  <u>Id.</u> at 18 (<u>quoting</u> <u>Bivens</u>, 403 U.S.

at 396).

  The <u>Bivens</u> Defendants argue that the Removal-Proceeding Plaintiffs and the Removed

Plaintiffs do not have a cause of action under <u>Bivens</u>.  It is unnecessary to address this argument

because the Court has dismissed the claims of these Plaintiffs for lack of subject matter

jurisdiction.  The <u>Bivens</u> Defendants concede that the Citizen Plaintiffs and the Legal-Alien

Plaintiffs may bring a cause of action under <u>Bivens</u> on their own behalf, but not on behalf of the

Removal-Proceeding Plaintiffs and the Removed Plaintiffs.  <u>Bivens</u> Defs.' Reply Br. at 10.  The

Court has already concluded that the Citizen Plaintiffs and the Legal-Alien Plaintiffs have

asserted their own individual <u>Bivens</u> claims.  Therefore, the Court finds that the Citizen and

Legal-Alien Plaintiffs may assert a cause of action under <u>Bivens</u>.

  **3.  The <u>Bivens</u> Defendants' Motion to Dismiss for Failure to State a Claim**

    **a.  Inadequate Notice**

  The <u>Bivens</u> Defendants contend that the Second Amended Complaint lacks specificity to

allow the named federal officers and ICE agents to prepare a defense on the merits.  In particular,

the <u>Bivens</u> Defendants argue that Plaintiffs should have alleged facts regarding the specific

address, date, and time that ICE agents committed actions that violated each Plaintiff's

constitutional rights.  <u>Bivens</u> Defs.' Mem. in Supp. of Mot. to Dismiss at 25-26.  This Court

agrees.  Plaintiffs have alleged that "[f]rom April 10-14, 2007, all named Plaintiffs, with the

exception of Raul Veliz, Jr., occupied homes forcibly entered by ICE agents without warrants or

consent in and around Willmar, MN." 2d Am. Compl. ¶ 68. This general allegation does not

provide sufficient detail regarding each Plaintiff's claims. Over fifty Plaintiffs have asserted

claims in this action. This is not a class action. Therefore, each Plaintiff must provide sufficient

notice so that a Defendant can prepare a defense to that Plaintiff's allegations. An identification

of a five-day time period and an assertion that Defendants violated Plaintiffs' rights at

undisclosed locations in Willmar and Atwater is inadequate to notify each Defendant of the

claim(s) he or she must defend against. Plaintiffs are required to amend the Second Amended

Complaint by specifying the date, time, location, and clear description of the conduct that forms

the factual basis for their claims.

### b.   Personal Involvement of the Named Federal Officers

The <u>Bivens</u> Defendants also argue that the Second Amended Complaint fails to

sufficiently allege that they were liable as supervisors for the alleged constitutional violations of

the ICE agents. "Unless [a] plaintiff pleads an 'affirmative link' between the supervisor's

"personal participation, his exercise of control or direction, or his failure to supervise,' dismissal

is appropriate." <u>Bellecourt v. United States</u>, 784 F. Supp. 623, 633 (D. Minn. 1992) (<u>quoting</u>

<u>McKay v. Hammock</u>, 730 F.2d 1367, 1374 (10th Cir. 1984)). The Second Amended Complaint

alleges that Baniecke, Berg, and Gay were personally involved and personally contributed to

coordinating and executing the unconstitutional activities that occurred during the Willmar

immigration raids. <u>Id.</u> ¶¶ 54-56. These allegations are sufficient to state a claim against them.

The allegations against Myers and Torres amount to a description of their positions and

duties, and an allegation, "[u]pon information and belief, [that] the techniques applied during the

raids were organized and approved by Defendants and other federal government officials and

were not the product of *ad hoc* decisions by field operatives.  In short, U.S. [DHS] officials

created and approved operations that willfully . . . disregarded Plaintiffs' Constitutional

protections." 2d Am. Compl. ¶ 5.  Under the liberal notice pleading standard Rule 8 of the

Federal Rule of Civil Procedure, the Court finds these allegations, coupled with the alleged

constitutional violations, adequately state that Myers and Torres created or acquiesced in an

unconstitutional policy under which ICE agents forcibly entered homes without probable cause.

### c.        Plaintiffs' Sixth Amendment Claims

The <u>Bivens</u> Defendants argue that the Citizen and Legal-Alien Plaintiffs' Sixth

Amendment right-to-counsel claims must be dismissed because no criminal charges have been

filed against them.  <u>See</u> <u>Texas v. Cobb</u>, 532 U.S. 162, 167-68 (2001) (noting that Sixth

Amendment right to counsel does not attach until a prosecution is commenced).  By failing to

respond to this argument, Plaintiffs have conceded dismissal of their Sixth Amendment claims.

### D.        Plaintiffs' <u>Miranda</u> Claims

The <u>Bivens</u> Defendants also argue for dismissal of any damages claims premised on the

failure of ICE agents to provide <u>Miranda</u> warnings to the Citizen and Legal-Alien Plaintiffs.  The

Eighth Circuit has clearly held that litigants cannot recover money damages "based on a

violation of the <u>Miranda</u> safeguards."  <u>Hannon v. Sanner</u>, 441 F.3d 635, 636 (8th Cir. 2006).

Accordingly, Plaintiffs' <u>Miranda</u> claims are dismissed.

### 4.        The <u>Bivens</u> Defendants' Motion for Summary Judgment

The <u>Bivens</u> Defendants argue they should be granted summary judgment because there is

no evidence they were personally involved in the constitutional violations alleged in the Second

Amended Complaint.[4]  In support of summary judgment, the <u>Bivens</u> Defendants rely on their

Declarations.  Gay Decl. [Docket No. 69]; Berg Decl. [Docket No. 70]; Myers Decl. [Docket No.

71]; Torres Decl. [Docket No. 72]; and Baniecke Decl. [Docket No. 73].  Myers, Torres, and

Baniecke state they were not in Willmar when the raids occurred, and they assert they did not

have knowledge of a policy that caused the constitutional violations alleged by Plaintiffs.  Myers

Decl. ¶¶ 2, 5; Torres Decl. ¶¶ 5-6; Baniecke Decl. ¶¶ 3, 5-6.  Gay avers he talked to Veliz on

April 12, 2007, but did not require Veliz to stop his car.  Gay Decl. ¶ 4.

   In response, Plaintiffs assert that summary judgment is inappropriate because they have

not had an opportunity to conduct discovery.  Defendants are correct that Plaintiffs have not

complied with Federal Rule of Civil Procedure 56(f).  "Under the rule, one who claims a need

for additional discovery must file an affidavit stating the reasons they cannot sufficiently

establish the existence of a material factual dispute."  <u>Adams v. Resolution Trust Corp.</u>, 731 F.

Supp. 352, 358 n.10 (D. Minn. 1990).  Although Plaintiffs have failed to comply with Rule 56(f),

the Court will grant them an opportunity to file a Rule 56(f) affidavit.  After reviewing Plaintiffs'

Rule 56(f) affidavit, the Court will decide the <u>Bivens</u> Defendants' Motion for Summary

Judgment.

**C.      The United States Defendants' Motion to Dismiss Counts I-IV, VI, and VII**

      **1.      Claims for Money Damages**

   Plaintiffs seek money damages from ICE, DHS, and Chertoff, Myers, Torres, Baniecke,

---

[4] The <u>Bivens</u> Defendants assert that qualified immunity shields them from discovery.
However, they do not make any substantive arguments in support of a qualified immunity
defense.  <u>Bivens</u> Defs.' Mem. in Supp. of Mot. to Dismiss at 23-30.

Berg, and Gay in their official capacities.[5]  The United States Defendants argue this Court lacks subject matter jurisdiction over Plaintiffs' claims for money damages against the United States because Plaintiffs have failed to exhaust their administrative remedies, as required by the Federal Tort Claims Act ("FTCA").  In response, Plaintiffs argue seeking administrative remedies would be futile.

Although the parties address the FTCA, that statute is inapplicable.  The FTCA waives the United States' sovereign immunity for certain state law torts committed by federal officers:

> The district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for [certain torts committed by] any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  The Supreme Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA."  FDIC v. Meyer, 510 U.S. 471, 478 (1994).  Plaintiffs assert claims under the United States Constitution and the INA.  Plaintiffs do not assert any state law claims.  Therefore, the FTCA cannot apply to waive the United States' sovereign immunity to Plaintiffs' claims for money damages.

Plaintiffs have not identified any statutory authority for their money damages claims against the United States Defendants.  The Supreme Court has not recognized an implied Bivens cause of action against federal agencies for damages arising from employees' constitutional torts.  Id. at 484-86.  Therefore this Court lacks subject matter jurisdiction over Plaintiffs'

---

[5] Claims against a federal officer in his official capacity are suits against the United States Government.  Hutchinson v. United States, 677 F.2d 1322, 1327 (9th Cir. 1982).

claims for money damages against the United States Defendants.

### 2.    Claims for Injunctive Relief

Plaintiffs seek unspecified injunctive relief against constitutional violations of the type alleged in the Second Amended Complaint.  2d Am. Compl. at 28.  The United States Defendants argue these claims must be dismissed because Plaintiffs lack standing.  Article III of the Constitution states that the judicial power of the United States extends only to certain cases or controversies.  A plaintiff must allege that he "has sustained or is immediately in danger of sustaining some direct injury."  Massachusetts v. Mellon, 262 U.S. 447, 488 (1923).  "The injury or threat of injury must be both real and immediate, not conjectural or hypothetical."  O'Shea v. Littleton, 414 U.S. 488, 494 (1974) (quotations omitted).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  Id. at 495-96.

The leading case establishing the requirement of standing for injunctive relief is the Supreme Court's decision in City of Los Angeles v. Lyons, 461 U.S. 95 (1983).  Lyons alleged that Los Angeles police officers applied a chokehold on him without provocation.  Id. at 97-98.  Lyons further claimed it was the police department's policy to regularly apply chokeholds.  Id. at 98.  Lyons sought damages and injunctive relief against the use of chokeholds except for situations where a person threatens the immediate use of deadly force.  Id. at 98.  The Supreme Court held that Lyons lacked standing to pursue injunctive relief because his allegations did "nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part."  Id. at 105.  The Lyons

Court stated that even if Los Angeles had a policy that authorized officers to use chokeholds without provocation, "Lyons would have to credibly allege that he faced a realistic threat from the future application of the City's policy." Id. at 106 n.7.[6]

In the instant case, Plaintiffs seek injunctive relief to prevent ICE agents from violating their constitutional rights during future immigration raids. At least one district court has rejected almost identical claims for lack of standing. In Mancha v. ICE, No. 1:06-CV-2650, 2007 WL 4287766, at *1 (N.D. Ga. Dec. 5, 2007), the plaintiffs "allege[d] that ICE agents entered their homes without warrants and detained them without probable cause because of their ethnicity." The Mancha court held that the plaintiffs lacked standing for injunctive relief because "the Plaintiffs have not shown a real and immediate threat of future harm. At best, they have alleged facts showing a past injury. The allegations with respect to a policy of discriminating against Latinos do not allege a future injury that is imminent and concrete enough for judicial consideration." Id. at *2.

Like the fact pattern of Mancha, Plaintiffs' Second Amended Complaint alleges a past injury. Plaintiffs have not asserted any facts that show a likelihood that Plaintiffs will again be targeted by ICE agents who will violate Plaintiffs' constitutional rights. Instead, Plaintiffs argue that their likelihood of future injury is satisfied by their allegations that the immigration raids in Willmar are part of an ongoing national initiative by ICE, pursuant to a policy developed at "the top levels of the current Administration." Pls.' Opp'n to U.S. Defs.' Mot. to Dismiss [Docket No. 85] at 14. However, assuming arguendo that future immigration raids will be similar to

---

[6] Most of the authorities relied on by Plaintiffs to support injunctive relief were decided before Lyons.

Operation Cross Check, Plaintiffs still have not alleged any facts demonstrating a realistic threat that they will again be the target of the enforcement effort.  The Court finds that the alleged threat of future harm to these Plaintiffs is too speculative and remote for Plaintiffs to assert claims for injunctive relief.

**D.      The City Defendants' Motions**

**1.      Motion to Dismiss**

Plaintiffs have asserted claims against the City Defendants under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

"To state a claim under section 1983, a plaintiff must set forth facts that allege an action performed under color of state law that resulted in a constitutional injury."  Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).  Under the Supreme Court's decision in Monell v. Department of Social Services, 436 U.S. 658, 690-92 (1978), a governmental entity cannot be held liable under § 1983 merely because its employees committed unconstitutional acts.  Instead, a governmental entity is liable under § 1983 only if its "custom or policy caused the deprivation of the right protected by the constitution or federal law."  Angarita v. St. Louis County, 981 F.2d 1537, 1546 (8th Cir. 1992).  Therefore, "a plaintiff seeking to impose such liability is required to identify either an official municipal policy or a widespread custom or practice that caused the plaintiff's injury."  Springdale Educ. Ass'n, 133 F.3d at 651.

### a.      Individual-Capacity Claims

### I.      Failure to Serve the John Doe Willmar Police Officers

The City Defendants argue that the unnamed John Doe Willmar Police Officers must be dismissed because they have not been properly served in accordance with Federal Rule of Civil Procedure 4(m).  City Defs.' Mem. in Supp. of Mot. to Dismiss [Docket No. 57] at 22-23. However, dismissal of the John Doe Willmar Police Officers "is proper only when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention."  Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985).  Because the parties have not conducted any discovery, the Court denies the City Defendants' motion for dismissal of the John Doe Willmar Police Officers on the basis of lack of service.

### ii.      Claims Against the City Defendants

The City Defendants contend that Plaintiffs' individual-capacity § 1983 claims against them must be dismissed.  As a threshold matter, the Court must consider whether § 1983 even applies in this case.  The City Defendants assert they were assisting ICE agents in enforcing the immigration laws.  City Defs.' Mem. in Supp. of Mot. to Dismiss at 16-18.  Congress has addressed this situation in 8 U.S.C. § 1357, which "specifically empower[s] the Attorney General . . . to contract with state and local agencies for assistance in enforcing immigration laws and incarcerating illegal aliens."  United States v. Vasquez-Alvarez, 176 F.3d 1294, 1300 (10th Cir. 1999).  A formal agreement is unnecessary for a state or local officer "to communicate with the Attorney General regarding the immigration status of any individual . . . or otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States."  8 U.S.C. § 1357(g)(10).  "In performing a

function under this subsection, an officer or employee of a State or political subdivision of a

State shall be subject to the direction and supervision of the Attorney General."  8 U.S.C.

§ 1357(g)(3).  Significantly, Congress has provided that "[a]n officer or employee of a State or

political subdivision of a State acting under color of authority under this subsection, or any

agreement entered into under this subsection, shall be considered to be acting under color of

Federal authority for purposes of determining the liability, and immunity from suit, of the officer

or employee in a civil action brought under Federal or State law."  8 U.S.C. § 1357(g)(8).

The Second Amended Complaint alleges that the City Defendants assisted in the

planning and execution of Operation Cross Check, which is a DHS operation implemented by

ICE.  Although the City Defendants apparently assume that § 1983 applies, it is difficult to

discern how their participation in Operation Cross Check occurred under color of state law.

Instead, it appears from Plaintiffs' allegations that the City Defendants acted under color of

federal authority pursuant to 8 U.S.C. § 1357(g)(8).  If so, then Plaintiffs' § 1983 claims should

be construed as <u>Bivens</u> claims.  <u>See</u> <u>Buonocore v. Harris</u>, 65 F.3d 347, 359 (4th Cir. 1995)

(quoting district court's statement that "because [deputy sheriff] was acting pursuant to federal

authority, he took on the rights and obligations of a federal officer"); <u>Ellis v. Blum</u>, 643 F.2d 68,

83 n.17 (2d Cir. 1981) ("The mere fact that the federal agents happen to be state officials does

not, without more, convert every intentional deviation from the federal path into an action under

color of state law."); <u>Askew v. Bloemker</u>, 548 F.2d 673, 677 (7th Cir. 1976) (stating that "the

mere assertion that one is a state officer does not necessarily mean that one is acting under color

of state law").  Although the parties have not briefed the issue, Congress's statutory directive in

§ 1357(g)(8) is clear.  Accordingly, assuming Plaintiffs' allegations are true, the Court finds that

the City Defendants were acting under color of federal authority.

The City Defendants argue that the allegations against Kulset, the John Doe Willmar Police Officers, Reed Schmidt, and Paul Schmidt do not adequately state a claim for relief.  The Second Amended Complaint alleges that Kulset and Reed Schmidt "[were] personally involved in and/or personally ordered or authorized members of [their] department[s] to cooperate with ICE agents during the unlawful activities alleged herein."  2d Am. Compl. ¶¶ 58, 60.  Paul Schmidt is alleged to have "participated directly in ICE raid activities within the City of Atwater."  2d Am. Compl. ¶ 61.  Plaintiffs allege the John Doe Willmar Police Officers "were present at the scene and assisted in the immigration activities conducted by ICE agents operating within . . . Willmar."  Id. ¶ 59.

In short, Plaintiffs have alleged that ICE agents violated the Constitution by, *inter alia*, forcibly entering homes without warrants and without consent, and that the City Defendants knowingly assisted ICE agents in these violations.  Although these allegations are cursory, the Court finds they satisfy the liberal notice pleading standard of Rule 8 of the Federal Rules of Civil Procedure.  The Court rejects the City Defendants' argument that the potential availability of a qualified immunity defense imposes a heightened pleading requirement on Plaintiffs.  See Doe v. Cassel, 403 F.3d 986, 989 (8th Cir. 2005) (concluding that heightened pleading standard does not apply in analogous § 1983 suits because "[t]he only permissible heightened pleading requirements in civil suits are those contained in the Federal Rules of Civil Procedure or those in federal statutes enacted by Congress").  As the Eighth Circuit has stated, "qualified immunity is an affirmative defense, which will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint."  Whisman v. Rinehart, 119 F.3d 1303, 1309 (8th Cir.

27

1997).  Nothing on the face of Plaintiffs' Second Amended Complaint demonstrates that the City

Defendants are entitled to qualified immunity.[7]

However, to the extent Plaintiffs are asserting that Kulset and Reed Schmidt are liable as

supervisors, the Court finds Plaintiffs' allegations fail to state a claim.  Under 8 U.S.C.

§ 1357(g)(3), any Willmar or Atwater officers who assisted ICE in executing Operation Cross

Check did so under "the direction and supervision of the Attorney General."  Because officers of

the federal government supervised the Willmar and Atwater police officers during Operation

Cross Check, Kulset and Reed Schmidt cannot be liable as supervisors.

Finally, the City Defendants argue Plaintiffs have not sufficiently stated a conspiracy

claim under 42 U.S.C. § 1983 or 42 U.S.C. § 1985(3).  As discussed above, 42 U.S.C. § 1983

does not apply because the City Defendants were acting under color of federal authority pursuant

to 8 U.S.C. § 1357.  Therefore, the Court will analyze whether Plaintiffs have sufficiently

pleaded a civil conspiracy claim under § 42 U.S.C. § 1985(3).  To plead a conspiracy under

§ 1985(3), Plaintiffs must allege and prove: "(1) the existence of a civil conspiracy; (2) that the

purpose of the conspiracy was to deprive [them] either directly or indirectly of [their] civil

rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4)

damages, shown by demonstrating . . . the deprivation of a civil right."  Mettler v. Whitledge,

165 F.3d 1197, 1206 (8th Cir. 1999).  "[A]llegations of conspiracy must be pleaded with

sufficient specificity and factual support to suggest a meeting of the minds directed toward an

---

[7] The Court notes that "[q]ualified immunity is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted to determine whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation."  Whisman, 119 F.3d at 1309.

unconstitutional action." Nelson v. City of McGehee, 876 F.2d 56, 59 (8th Cir. 1989) (quotation

omitted).  For § 1985(3) to apply, "there must be some racial, or perhaps otherwise class-based,

invidiously discriminatory animus behind the conspirators' action."  Griffin v. Breckenridge, 403

U.S. 88, 102 (1971).

Construed liberally, the Second Amended Complaint alleges that the City Defendants, the

County Defendants, and ICE agents conspired to deprive Plaintiffs of their constitutional rights

to be free from unreasonable searches and seizures, and that the conspirators were motivated by

the fact that almost all Plaintiffs are Latinos.  The conspirators committed overt acts when they

executed the allegedly unreasonable searches and seizures.  The Court finds these allegations are

sufficient to defeat the City Defendants' Motion to Dismiss.

### b.      Official-Capacity Claims

Although the City Defendants do not address the full implication of 8 U.S.C. § 1357(g),

the Court finds that the statute bars Plaintiffs' Monell claims against the City Defendants in their

official capacities.  Plaintiffs seek to hold the City Defendants liable in their official capacities

for assisting ICE in implementing Operation Cross Check, which is a federal immigration

initiative executed pursuant to federal policy.  The City Defendants' assistance falls squarely

within the ambit of § 1357(g).  Accordingly, the City Defendants are considered to be acting

under color of federal authority and under the supervision of the Attorney General and the DHS

Secretary.[8]  Therefore, Plaintiffs cannot assert a 42 U.S.C. § 1983 Monell claim because the City

Defendants were not acting under color of state law, and they were not the final policymakers

---

[8] As with 8 U.S.C. § 1252(g), § 1357's reference to "the Attorney General" rather than to
the "Attorney General or the DHS Secretary" is outdated.

regarding Operation Cross Check.  Alternatively, even if § 1357(g) does not apply, Plaintiffs

have still failed to allege a city policy that was the moving force behind the alleged

constitutional violations.  Plaintiffs' claims arise from the federal policies embodied in the

planning and implementation of Operation Cross Check, and not from any city or county

policies.  2d Am. Compl. ¶ 5.  The Court grants the City Defendants' motion to dismiss the

official-capacity <u>Bivens</u> claims against them.

### 2.    Motion for Summary Judgment

The City Defendants argue they should be granted summary judgment based on the

affidavits Plaintiffs attached to the First Amended Complaint and based on declarations ICE

officials Berg and Gay filed in opposition to Plaintiffs' Motion for a Temporary Restraining

Order.  Plaintiffs' affidavits generally describe ICE agents' warrantless, non-consensual entries

into Plaintiffs' homes.  First Am. Compl. Exs. 1-19.  The affidavits do not reference local law

enforcement officers.  Berg and Gay submitted declarations stating that ICE agents executed the

"knock-and-talk" method during Operation Cross Check.  Berg states he received no reports of

"anything other than consensual entries and consensual searches into residences."  Berg Decl.

[Docket No. 19] ¶ 8.  Gay states that he is not aware of any non-consensual entries.  Gay Decl.

[Docket No. 21] ¶ 8.  He also avers that ICE informed local agencies that "this was an ICE

operation, and that the local agencies were only being relied upon for assistance." <u>Id.</u> ¶ 6.  Gay

avers that ICE planned to do knock-and-talks only on residences where deportable aliens lived.

<u>Id.</u> ¶ 5.

The City Defendants argue Plaintiffs' affidavits and Berg and Gay's declarations

demonstrate the limited involvement of the City Defendants in Operation Cross Check.

Plaintiffs again aver that they need discovery to develop the evidence in support of their claims. The City Defendants have not argued that Plaintiffs should have filed a Rule 56(f) affidavit. Nevertheless, the Court will order Plaintiffs to file a Rule 56(f) affidavit addressing the proposed discovery and how it will enable them to demonstrate a genuine issue of material fact. The Court will rule on the City Defendants' summary judgment motion at that time.

**E.      The Kandiyohi County Defendants' Motions**

**1.      Motion to Dismiss**

The Kandiyohi County Defendants contend that Plaintiffs' Second Amended Complaint does not allege any specific facts regarding the unconstitutional conduct of the Kandiyohi County Defendants. Plaintiffs allege that: (1) Kandiyohi County Sheriff Hartog "was personally involved in and/or personally ordered or authorized members of his department to cooperate and participate with ICE agents during the unlawful activities alleged herein;" (2) John Doe Kandiyohi County Sheriff's Department Deputies "assisted ICE agents in coordinating raid activities and/or were present at the scene of the unlawful conduct by ICE agents operating within the County of Kandiyohi"; and (3) Jane Doe Kandiyohi County Probation Officer "compiled immigration information on the basis of Plaintiffs' race and national origin and presented it to ICE." 2d Am. Compl. ¶¶ 62-64.

For the reasons stated above regarding the City Defendants, the Court finds these allegations adequately state <u>Bivens</u> claims that each individual Kandiyohi County Defendant participated in conduct that led to violations of Plaintiffs' constitutional rights, such as the right against unreasonable searches and seizures. Similarly, the Court finds that Plaintiffs have adequately stated 42 U.S.C. § 1985(3) conspiracy claims against the Kandiyohi County

Defendants.  However, Plaintiffs have failed to state supervisory-liability claims against Hartog because under 8 U.S.C. § 1357(g)(3), the Kandiyohi County Defendants were acting under the supervision of ICE agents.  Plaintiffs' official-capacity claims against the County Defendants are dismissed because the County Defendants' activities in support of Operation Cross Check were under color of federal authority pursuant to 8 U.S.C. § 1357(g)(8).

Finally, the Court will grant Plaintiffs leave to properly serve process on Kandiyohi County regarding Plaintiffs' claims against the John Doe and Jane Doe Kandiyohi County Defendants.  See Kraemer v. St. Croix Mgmt. Co., Civ. No. 02-284, 2002 WL 31718426, at *2 (D. Minn. Nov. 21, 2002) (discussing service of process on John Doe defendants).

### 2.    Motion for Summary Judgment

The Kandiyohi County Defendants argue they should be granted summary judgment on the basis of qualified immunity.  The Kandiyohi County Defendants have submitted the affidavits of Sheriff Hartog [Docket No. 63], Chief Deputy Randy Kveene ("Kveene") [Docket No. 64], Officer Ross Ardoff ("Ardoff") [Docket No. 66], and Probation Officer Serena Robak ("Robak") [Docket No. 65].  Hartog asserts that before April 5, 2007, an ICE agent contacted him to set up a meeting regarding an upcoming operation (Operation Cross Check).  Hartog Aff. ¶ 2.  Hartog told Kveene to meet with the ICE agents and provide assistance.  Id. ¶ 3.  Hartog avers the only other communication he received regarding Operation Cross Check was when an ICE agent called to thank Hartog for his department's assistance.  Id. ¶ 4.

Kveene asserts he attended a meeting with ICE agents on April 5, 2007.  Kveene Aff. ¶¶ 2-3.  Kveene recalls that Gay, a second ICE agent, and two members of the Willmar Police Department were present.  Id.  The ICE agents stated they needed help locating the addresses on

32

their list of targets, and they needed a place to interview and prepare the transport of anyone detained during Operation Cross Check. Id. ¶ 4. Kveene authorized two officers to assist ICE agents with navigation, and he allowed ICE agents to use the Kandiyohi County jail to interview detainees. Id. ¶¶ 4, 6. Kveene avers ICE agents did not inform him of the techniques that would be used during Operation Cross Check, nor did he have any input into the list of targets. Id. ¶ 5.

Ardoff states he attended a meeting on April 10, 2007, that included twelve ICE agents, members of the Willmar Police Department, and others. Ardoff Aff. ¶ 3. During the four days of Operation Cross Check, Ardoff assisted the ICE agents in locating the targeted addresses, and he maintained the perimeter at each address while ICE agents performed knock-and-talks. Id. Aff. ¶¶ 4-5. Ardoff states he followed ICE agents' instructions. Id. ¶¶ 4-5. Ardoff states he did not observe any unconstitutional behavior by the ICE agents. Id. ¶ 5. Finally, Ardoff avers he was not "involve[d] at any time with any initial entry into any premises whatsoever." Id.

Robak states that in March 2007, Gay contacted her and provided her with a list of deportable aliens with criminal convictions that ICE had compiled for Operation Cross Check. Robak Aff. ¶¶ 2-3. Gay asked Robak to determine if the addresses on the list were current. Id. ¶ 3. Robak reviewed the list and notified Gay that certain addresses were no longer current. Id. ¶ 4. Robak avers she did not provide any immigration information to ICE agents. Id. ¶¶ 4-5.

Based on these affidavits, the County Defendants argue they are entitled to summary judgment because there is no evidence they violated any Plaintiff's constitutional rights, and they are entitled to qualified immunity because they were entitled to reasonably rely on the instructions of the ICE agents. In response, Plaintiffs assert they need discovery "to ascertain the exact parameters of Kandiyohi County defendants' involvement" in the unconstitutional

conduct.  Pls.' Opp'n to County Defs.' Mot. to Dismiss [Docket No. 87] at 31.  Again, Plaintiffs

have failed to comply with Rule 56(f) of the Federal Rules of Civil Procedure.  The Court will

grant Plaintiffs leave to file a Rule 56(f) affidavit explaining how discovery will enable them to

demonstrate a genuine issue of material fact.  After reviewing Plaintiffs' Rule 56(f) affidavit, the

Court will rule on the County Defendants' Motion for summary judgment.

**F.     Severance**

The Bivens Defendants, the City Defendants, and the County Defendants have requested

that Plaintiffs' claims be severed.  Rule 20(a)(1) of the Federal Rules of Civil Procedure allows

plaintiffs to join together in one action "if they assert any right to relief jointly, severally, or in

the alternative with respect to or arising out of the same transaction, occurrence, or series of

transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in

the action."  The standard for joinder of defendants is similar.  Fed. R. Civ. P. 20(a)(2).   Rule

21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop

a party.  The Court may also sever any claim against a party."

At this early stage of the litigation, the Court denies without prejudice the requests to

sever.  The issue of severance will be revisited when it is determined which claims will survive

for trial.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants United States Immigration and Customs Enforcement Division of the Department of Homeland Security, Michael Chertoff ("Chertoff"), Julie L. Myers ("Myers"), John P. Torres ("Torres"), Scott Baniecke ("Baniecke"), Peter Berg ("Berg"), and Allen Gay's ("Gay") Motion to Dismiss [Docket No. 77] Counts I-IV, VI, and VII of Plaintiffs' Amended Complaint [Docket No. 43] is **GRANTED**;

2. The claims against the following Defendants are **DISMISSED**: the Department of Homeland Security, and Chertoff, Myers, Torres, Baniecke, Berg, and Gay in their official capacities;

3. Defendants Myers, Torres, Baniecke, Berg, and Gay's Motion to Dismiss [Docket No. 68] Count V of the Amended Complaint is **GRANTED IN PART AND DENIED IN PART**;

4. The claims of the following Plaintiffs are **DISMISSED**: Carlos Hilario Arias, Dulce Maria Hernandez Arias, Rose de Jesus Barrajas Arrellano, Jose Manuel Calix, William Ramos Castillo, Fabiola Cisneros, Teresa de Jesus Guerrero, Rosa Nely Duarte, Esau Eduardo Estrada-Menendez, Iris Janet Maldonado, Jenny Maldonado, Ana Danira Maldonado-Hernandez, Juan Muñoz, and Samuel Zelaya;

5. Defendants City of Willmar, James A. Kulset ("Kulset"), John Doe Willmar

Police Officers ##1-10 (collectively, the "Willmar Defendants"), City of Atwater, Reed Schmidt, and Paul Schmidt's (collectively, the "Atwater Defendants") (the Willmar Defendants and the Atwater Defendants collectively are the "City Defendants") Motion for Dismissal [Docket No. 55] is **GRANTED IN PART AND DENIED IN PART**;

6.      Plaintiffs' claims arising out of Defendants' failure to provide <u>Miranda</u> warnings and Defendants' alleged violations of the Sixth Amendment's right to counsel are **DISMISSED**;

7.      The claims against the following Defendants are **DISMISSED**: the City of Willmar, the City of Atwater, and Kulset, Reed Schmidt, and Paul Schmidt in their official capacities;

8.      Defendants Dan Hartog ("Hartog"), John Doe Kandiyohi County Sheriff's Deputies ##1-10, and Jane Doe Kandiyohi County Probation Officer's (collectively, the "Kandiyohi County Defendants") Motion to Dismiss [Docket No. 60] is **GRANTED IN PART AND DENIED IN PART**;

9.      The claims against Hartog in his official capacity are **DISMISSED**;

10.     The <u>Bivens</u> Defendants, the City Defendants, and the Kandiyohi County Defendants' alternative motions to sever are **DENIED WITHOUT PREJUDICE**;

11.     By April 30, 2008, Plaintiffs' counsel must file affidavits addressing why Plaintiffs cannot present facts in opposition to the <u>Bivens</u> Defendants, the City Defendants, and the Kandiyohi County Defendants' alternative motions for

summary judgment.  The Court does not anticipate that additional briefing of the

summary judgment motions will be necessary.  If the affidavits raise issues

requiring briefing, the Court will notify counsel.


BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 23, 2008.